# EXHIBIT "A"

&
Art By Tristan

Facebook Pages:
Vintage Tiny Houses
&
Art By Tristan

"Encouragement, Inspiration, & Empowerment!"

**Confidentiality Notice -** *This e-Mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential or privileged information. If this message concerns a lawsuit, it may be considered a privileged communication. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.*

**From:** Lindsey Darby <lbatchelor@waltonso.org>
**Sent:** Friday, July 14, 2023 2:41:06 PM
**To:** Tristan Hyde <vintagetinyhouses@outlook.com>; PIO <PIO@waltonso.org>
**Cc:** Alli Lytle <lytalli@waltonso.org>
**Subject:** Re: Request; Sheriff Adkinson

Tristan,
I apologize for the delay in my response. I had an event in Paxton this morning and am just catching up on emails from last night and this morning.

I have CC'd the sheriff's executive assistant, Alli Lytle, on this email. She will be able to assist you in coordinating a meeting with the sheriff.

Lindsey Darby

Public Information Officer

(850) 307-7157 | Cell

(850) 951-4948 | Office

Walton County Sheriff's Office
752 Triple G Road
DeFuniak Springs, FL 32433
(850)892-8111



**MICHAEL A. ADKINSON, JR., SHERIFF**
Office of the Sheriff, Walton County

**From:** Tristan Hyde <vintagetinyhouses@outlook.com>
**Sent:** Thursday, July 13, 2023 7:37 PM
**To:** PIO <PIO@waltonso.org>
**Subject:** Request; Sheriff Adkinson

Sir or Ma'am,

I do hope this correspondence finds you well.

I have requested to speak to the Sheriff through direct phone call to his staff with no return call aswell as sent numerous letters to him that have been logged as mailed by USPS.

Can I be scheduled to have a formal phone call with the Sheriff and or a face to face meeting?

There are several local issues I want to speak to the Sheriff about that need to be addressed.

I do appreciate the Sheriff taking his time and having a Facebook live meeting today with the community. A perfect example of transparency and community synergy.

V/R

Tristan Hyde
Owner/Designer/Artist
(P)850-420-9640
vintagetinyhouses@outlook.com
Vintage Tiny Houses
&
Art By Tristan

Facebook Pages:
Vintage Tiny Houses
&
Art By Tristan

"Encouragement, Inspiration, & Empowerment!"

**Confidentiality Notice -** *This e-Mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential or privileged information. If this message concerns a lawsuit, it may be considered a privileged communication. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.*

Sir or Ma'am,

I called the Sheriffs Department yesterday following communication with Ideological Technologies who works with the Walton County Sheriffs Office.

My company QuickBooks Go Payments Account and multiple other programs on my IPhone continue to be disrupted. The QuickBooks Go payment account continues to be closed by an unauthorized third party.

I reported this to the deputy that called me and he stated there isn't anything the Sheriff's Office can do.

Why is there not a department that strictly deals with IT challenges that small business owners within the county face with data intrusion? The Governor created the digital bill of rights to combat this problem...i.e., hacking, etc..

Our intellectual property as Floridians needs to be protected and there must be law enforcement specifically in place to investigate these breaches.

Can the Sheriff please contact me at the number below to discuss this matter? The deputies have NO protocol to direct me.

V/R

Tristan Hyde
850-829-5862

Sent from my iPhone

# Gabrielle Cuchens

| | |
|---|---|
| **From:** | Paula Currid |
| **Sent:** | Monday, March 4, 2024 3:15 PM |
| **To:** | Gabrielle Cuchens |
| **Subject:** | FW: Tristan Hyde; Hepatitis C Diagnosis |

---

**From:** John Moring <JMoring@waltonso.org>
**Sent:** Monday, September 11, 2023 3:36 PM
**To:** Corey Dobridnia <cdobridnia@waltonso.org>
**Subject:** RE: Tristan Hyde; Hepatitis C Diagnosis

I appreciate it. I will discuss this with Chief Brock.

---

**From:** Corey Dobridnia <cdobridnia@waltonso.org>
**Sent:** Monday, September 11, 2023 3:28 PM
**To:** John Moring <JMoring@waltonso.org>; Dustin Burlison <dburlison@waltonso.org>
**Cc:** Lindsey Darby <lbatchelor@waltonso.org>; Dawn Cooper <MCooper@waltonso.org>
**Subject:** Fw: Tristan Hyde; Hepatitis C Diagnosis

Gentleman,

We received this email from Tristan Hyde (previous inmate) who has received a Hep C diagnosis.

I was not sure how to move forward with this or who to advise. I just wanted to pass it along to both of you as an FYI.

Corey Dobridnia
Public Information Officer

(850)-855-0299 | Cell

(850)-951-4759 | Office

Walton County Sheriff's Office
752 Triple G Road
DeFuniak Springs, FL 32433
(850)892-8111

 **MICHAEL A. ADKINSON, JR., SHERIFF**
Office of the Sheriff, Walton County

---

**From:** Tristan Hyde <vintagetinyhouses@icloud.com>
**Sent:** Friday, September 8, 2023 11:52 AM

**To:** PIO <PIO@waltonso.org>
**Subject:** Tristan Hyde; Hepatitis C Diagnosis

Sir or Ma'am,

I was in confinement at the Walton County Jail. I visited Dr Howell's office this morning to review my blood work and have been re- diagnosed with Hepatitis C. Review the synopsis below:



The point of this email is to let the Sheriff know there is a faulty Hepatitis C treatment that has been issued in Prisons and Jails across the country. I'M NOT SUING WCSO over this.

This is an email to inform. I will find out the name of the medication that I was issued that temporarily suppressed the virus in 2018 to ensure other prisoners and pre-trial detainees within the state of Florida receiving the medication can receive an alternate effective medication/treatment.

Big pharma are pushing bogus Covid-19 medications. With the Hepatitis C fast track medications failing across the country….it is affirmation the FDA and the ever corrupt "Big" Pharma corps in-line with each other are creating these "Wonder Medications" I.e., Hep C Meds….that are not long-term effective to make their billions disregarded the actual medical improvement of the patients.

I assure the WCSO and the State of Florida I will get to the bottom of this and take on Big Pharma for SPORT….

V/R

Tristan Hyde
Owner & Masterclass Artist
Vintage Tiny Houses
(C) 850-829-5862
vintagetinyhouses@icloud.com

Facebook:

Vintage Tiny Houses

EXHIBIT

"B"



## MICHAEL A. ADKINSON, JR., SHERIFF
### Office of the Sheriff, Walton County

| General Order | | |
|---|---|---|
| Title: **Investigations** | | |
| Number: **2.3** | Effective Date: 09/13/23 | Amends: 05/11/20 |
| **Applicable Standards** | | |
| CFA: **15.01 (A-C) M; 15.02 M; 15.05; 15.11 (A-F) M** | | |
| FCAC: **None** | | |
| Approved by: | Sheriff Michael A. Adkinson, Jr. | |

I. **Purpose:** To establish guidelines for investigations.

II. **Authority:**

Chapter 30, Florida Statutes

III. **Definitions:**

**Active Case** – a case or investigation which has not been cleared by arrest, unfounded, closed, exceptionally closed, or inactive and for which assigned investigators are actively investigating leads.

**Investigation** – additional or subsequent investigative efforts after an investigation has begun.

**Preliminary Investigation** – the first or initial investigation into an incident.

**Surveillance** – a systematic observation of persons, places, or things that enable agency members to identify locations of persons, obtain intelligence information and verify informant information.

**Suspect** – a person who is suspected of having committed an act contrary to Florida Criminal Law.

IV. **General:**

A. Use of analytical support: The agency has established a Crime Intelligence Analyst (CIA) position whose duties and responsibilities are to support proactive investigative efforts. The CIA supports investigations through:

   1. Accessing criminal justice system databases to assist in identifying unknown subjects, vehicles or victims. Such databases may include open source, subscription services, social networking sites, or restricted criminal justice systems for "off-line" searches.

   2. Trend, pattern, or modus operandi analysis of criminal events.

3. Utilizing analytical software to develop link analysis or sorting of data such as phone tolls, subpoenaed financial records, etc.

4. Establishing lead tracking/management for intense/long term investigative efforts. The CIA will document analytical efforts through narratives to the case, providing raw data to the investigator for inclusion in the case file or by creating a document maintained with the case file.

## V. Procedures:

### A. Preliminary Investigations

*for Sheriff smoked my emails*

1. The first deputy arrives on scene. The first deputy shall:

   a) Protect Life.

   b) Render aide.

   c) Secure and protect the crime scene and or evidence.

   d) Locate and identify all witnesses.

2. The deputy conducting the preliminary investigation shall:

   a) Observe all conditions, events and remarks.

   b) Interview the complainant and ensure that all witnesses are located and interviewed.

   c) Ensure that evidence is properly collected, preserved, and/or processed.

   d) Locate and interview the suspect, if possible.

   e) Arrest the suspect of the crime, if probable cause can be determined.

   f) Complete an Offense/Incident Report fully and accurately, including all details of the investigation, along with any additional forms that are necessary.

3. Deputies are encouraged to follow up on preliminary investigations for the purpose of case closure, arrest, and the recovery of property. Cases not resolved during the preliminary phase of an investigation shall be referred to an appropriate investigative area, if applicable. While there is no specific formula for an investigation of every crime, there are certain general procedures that may be followed to ensure a thorough inquiry. These procedures include, but are not limited to:

   a) A review and analysis of reports prepared by the initiating deputy and a review of any other agency records that pertain to the investigation.

   b) Conducting additional interviews as necessary and seeking additional information from other deputies.

a) Investigations and surveillance will not be conducted during off-duty time.

b) No investigation or surveillance will be conducted outside the jurisdictional boundaries of Walton County without authorization of a supervisor and notification to the affected jurisdiction, notwithstanding the routine phone calls or routine interviews.

c) Agency members, other than the Vice/Narcotics Unit, will not conduct ongoing or covert investigations involving the possession, manufacture, sale, or distribution of any narcotic or dangerous drug named in Florida Statutes, unless such investigation is with the approval of their Bureau Chief and in coordination with the Criminal Investigation Bureau.

3. An investigation will not continue without the lead investigator ensuring the case is properly recorded in the automated database system.

E. Investigative Responsibility:

1. Assigned criminal cases will be followed up in order to ensure that that the facts are properly documented, and to exhaust all reasonable leads in order to resolve the criminal act.

2. Upon assignment of a case, members shall conduct a thorough and complete investigation and document it. Members shall contact the victim in the case within 3 working days. Members shall be cognizant to include new information and leads, as well as include attempts made to contact victims/witnesses/suspects and to update contact information in their investigative report(s), which was gleaned as part of their investigative efforts.

F. Follow-up Investigation:

1. Follow-up investigations shall be assigned to the appropriate investigator as determined by the type of offense. A follow-up investigation should:

a) Ensure that a preliminary investigation was thoroughly conducted.

b) Ensure continued investigative progress.

c) Work toward linking the offense with other similar incidents.

d) Assist in preparing the case for arrest and prosecution.

2. Review all agency records and external sources of information that may be pertinent to the case. Members conducting follow-up investigations should do a search in the agency computer database or other external sources for information possibly related to the incident currently under investigation. This search is to Identify, but not limited to:

a) Prior incidents at the same location where the incident currently under investigation occurred.

b) Any known suspects from prior incidents as described above.

c) To locate any identifiable stolen property from the case under investigation that may have been pawned and entered in the pawn shop database.

d) To identify any potential suspect who may have been field contacted by other deputies, in the area of and during the timeframe, when the incident under investigation occurred.

3. Review laboratory examinations that may be pertinent to the case. Members conducting follow-up investigations will review all laboratory reports related to the incident under investigation to determine if they provide any information; that may identify the perpetrator(s) of the incident under investigation, or provide any additional investigative leads that can be followed.

4. Conduct additional interviews as required. Upon completion of the initial case review, members conducting follow-up investigations shall make an initial determination of any additional witness, or potential witness that may need to be interviewed regarding the investigation. In addition, if a suspect or potential suspect has been identified, then an interrogation of the suspect may be appropriate.

a) Any interrogations will be conducted in accordance with Agency policy and with due regard for civil rights of the suspect being interrogated.

b) As the investigation progresses, members conducting follow-up investigations shall conduct additional interviews of witnesses as new witnesses are identified.

5. Seek additional information from patrol deputies, sources or any other person(s) who may have knowledge pertaining to the investigation.

a) Upon completion of the initial case review, members conducting follow-up investigations shall make an initial determination of potential sources of information related to the incident currently under investigation.

b) These sources of information can include, but are not limited to, deputies, confidential informants, cooperating defendants and citizens, etc.

6. Plan, organize and conduct searches for additional evidence. It is the responsibility of the member conducting the follow-up investigation to coordinate through their immediate supervisor any follow-up searches for additional evidence. All search warrants will be obtained in accordance with Agency Search Warrant policy.

7. Collect any physical evidence which may have been overlooked during the preliminary investigation.

a) Upon initiating a follow-up investigation, the member conducting the investigation shall review the initial case report to ensure that a thorough processing of the initial scene was conducted.

b) If additional scene processing is required, the member shall ensure that the processing is accomplished and any additional evidence is recovered. All evidence recovered will be placed into evidence in accordance with the Evidence Policy.

c)      In addition, the member will ensure that any evidence recovered is submitted for laboratory analysis, if applicable, in accordance with the guidelines of the Agency and the Florida Department of Law Enforcement.

8.     Arrange for dissemination of information which may assist in the investigation. It is the responsibility of the member conducting follow-up investigations to ensure that the internal dissemination of any information related to the incident under investigation is accomplished.

a)      Any release of information to the media will be coordinated  through the Public Information Officer.

9.     Identify and apprehend suspects. When a member conducting a follow-up investigation makes a determination that probable cause exists to arrest a suspect, it is the member's responsibility to complete a probable cause/arrest affidavit and/or apply for an arrest warrant for the suspect. It is the responsibility of the member to ensure that a diligent effort is made, by the investigating member, to locate and arrest the suspect named in the affidavit or arrest warrant.

10.    Determine the suspect's involvement in other crimes. Members conducting follow-up investigations shall conduct a search of the Agency's computer database to determine if the suspect(s) identified in the investigation are named as a suspects involved in other crimes.

a)      The Agency crime analyst may also be a useful source for gathering this information.

11.    Determine the suspect's criminal history. Members conducting follow-up investigations will conduct (either themselves or by others) a search of the NCIC/FCIC computer database to determine the criminal history of any suspect(s) or potential suspect(s) in the incident under investigation may have.

a)      This search is done to determine the habitual offender status of the suspect and for member safety in determining the potential threat level of the suspect.

12.    Prepare cases for court presentation and assist in the prosecution.

a)      It is the responsibility of members conducting follow-up investigations to ensure that a complete copy of the initial case report, all subsequent investigative reports, statements, audio/video evidence, arrest affidavits, warrants, etc., are submitted to the State Attorney's Office or U.S. Attorney's Office to facilitate the criminal prosecution.

b)      In addition, members conducting follow-up investigations will assist the State Attorney or U.S. Attorney's Office in prosecuting the criminal case as requested.

G.     Suspending Investigative Efforts:

1.     When an investigation becomes inactive, it means that all available leads and sources of information have been exhausted. Inactive status is indicative of a case

that has not been cleared. Inactive cases are not closed. If new information or evidence in the case should develop, investigative efforts may be resumed. Criteria for suspending investigative efforts involve the continued evaluation of solvability, degree of seriousness, and may include a lack of further leads. Criteria for placing a case in inactive status are:

    a)    Absence of further leads or solvability.

    b)    Prioritizing of investigative resources reflective to the seriousness of the crime.

  2.    Any change of case status requires supervisory approval.

H.    Case Files:

  1.    A member's case file shall contain, when applicable: **CFA 15.01 (A) M**

    a)    A copy of the preliminary report.

    b)    Copies of statements.

    c)    Copies of results of examination of physical evidence.

    d)    All other reports and records needed for investigative purposes.

  2.    Each member is responsible for the completeness of their assigned case files. The offices of all investigators are within a secure (locked) area with access being granted to only those with permission to enter those areas. The supervisor of each investigator has direct access to the case files either within the offices or through the automated database system. **CFA 15.01 (B, C) M**

  3.    Members may retain notes or "working files". The member is responsible for maintaining security for any notes or working files. All investigative information contained in notes or working files must be incorporated in the automated database system. Once documentation is complete, working files or notes may be properly disposed of to leave but one official record of investigative efforts.

  4.    Vice/Narcotics Cases: Because of their sensitive nature, and for the safety and integrity of these investigations, active vice/narcotics files are maintained separately and differently from major crimes and property crime investigations, by restricting access in the automated database system. Records relating to active vice/narcotics investigations, such as confidential source files, will be maintained separately and securely from the central records system. These records will be maintained in a secure area within the Criminal Investigations Bureau. The Criminal Investigations Bureau is a secure area with access granted to only those with permission to enter the offices. **CFA 15.01 (C) M; CFA 15.02 M**

  5.    Purging old case files will be done in accordance with the State of Florida Records Retention Schedule.

I.    Requesting Polygraph Examinations:

1.    A polygraph test is not a substitute for a good criminal investigation and should be used only as an investigative tool.

2.    If a polygraph test is desired by an investigator or deputy, the investigator or deputy will make the request to his or her immediate supervisor. Prior to approval:

   a)    The immediate supervisor must determine that investigation by other means has been as thorough as circumstances reasonably permit and the development of additional information by means of polygraph is a reasonable avenue.

   b)    The proposed subject has been interviewed.

   c)    Crimes to be addressed are felony crimes.

3.    A polygraph examination may be justified only when a viable suspect has been identified. The polygraph will not be used to screen multiple potential suspects.

   a)    The case investigator/deputy will be available for case file review.

   b)    The case investigator/deputy will be present during the examination, in the event a confession is obtained.

4.    Polygraph Examiner Requirements:

   a)    The polygraph examiner will be highly proficient in the skills associated with the psycho physiological detection of deception.

   b)    The examiner will have graduated from a polygraph school accredited by The American Polygraph Association. **CFA 15.05**

5.    Testing: Standard polygraph testing procedures will be used by the examiner as applicable to case facts. Examination procedures shall include the following:

   a)    A completed <u>Miranda Rights</u> form, when necessary.

   b)    Obtain case information from the investigator/deputy requesting the exam.

   c)    Background information on the suspect.

   d)    Establish facts as given by the person being examined.

   e)    Review questions to be asked.

6.    Post-Test interview: If deception is indicated on the exam or inconclusive results exist, an interview may be initiated with the subject by the investigator/deputy.

   a)    If a confession is obtained, a case investigator/deputy will be called to obtain the confession.

   b)    A written report will be prepared by the polygraph examiner and will be made a part of the case file in the automated database system.

J.    **Undercover Surveillance and Decoy Operations:**

    1.    Any undercover, surveillance, decoy operation or raid must be approved by a sworn law enforcement supervisor with the rank of lieutenant or above of the unit conducting the operation prior to it being commenced. **CFA 15.11 (A) M**

    2.    An Operations Plan shall be written for each operation and approved by a supervisor. The Operations Plan and associated investigative report(s) will be utilized to document circumstances and activities occurring in the operation. **CFA 15.11 (F) M**

    3.    When conducting undercover, decoy, surveillance or raid operations, a single sworn supervisor of the unit conducting the operation will be responsible for, but not limited to, the following, if applicable:

        a)    Commanding the operation and providing supervision at all times. **CFA 15.11 (B) M**

        b)    Establishing routine and emergency communication procedures. The Communications Section should be made aware of the communications procedure.

        c)    Notifying the Watch Commander and appropriate District Lieutenant of the operation. Should the operation be in concurrent jurisdictions with any other local law enforcement agency, then the appropriate person at such agency will also be notified. **CFA 15.11 (C) M**

        d)    Confirming the target location. **CFA 15.11 (D) M**

        e)    Approval of the operational plan prior to it being implemented.

        f)    Ensuring that all members involved are familiar with, but not limited to, the following:

            (1)    Objectives, details and procedure of the operation.

            (2)    Procedures for making arrests during the operation.

            (3)    Members assigned to the operation and the responsibility of each member during the operation.

        g)    Ensure that an adequate number of members and back-up security are assigned to the operation.

        h)    Ensure that members are equipped with necessary and appropriate equipment and vehicles to carry out the objectives of the operation.

K.    When conducting undercover, decoy, or surveillance operations, the following guidelines and procedures will be adhered to, if applicable:

    1.    Steps will be taken to analyze and identify all known and potential suspects involved in the operation. **CFA 15.11 (E) M**

2.   Members will have an established plan when contact is made with suspects in an operation to include who will conduct interviews as needed. **CFA 15.1 1 (E) M**

3.   Care should be given in analyzing the neighborhood or target area of the operation in an effort to identify any special concerns of the investigation.

4.   Members assigned to an operation will be issued the appropriate expense funds, necessary equipment, and vehicles to accomplish the mission of the operation.

5.   Members assigned to an operation will be briefed on established means of routine and emergency communication procedures to be used during the operational plan.

6.   Strategies and tactics for approaching, entering, securing and leaving the target area will be developed for each operation and outlined in the operational plan.

7.   Any searches that occur during an operation will be conducted in accordance with established legal guidelines. Evidence and/or contraband encountered during an operation will be handled in accordance with Agency policy.

8.   Members participating in the operation will be identified and their duties articulated in an operational plan.

EXHIBIT "C"

MAY. 3, 2024

TO: HON. KRISTINA SAMUELS, CLERK
2000 DRAYTON DRIVE
TALLAHASSEE FLORIDA 32399

FROM: TRISTAN MICHAEL HYDE
WALTON COUNTY JAIL
40 SHERIFF CIRCLE
DEFUNIAK SPRINGS, FL 32733

RE: FDCA NO. 1D2024-0914 : MOTION TO SHOW CAUSE

MAAM,
    PLEASE FILE THE INCLUDED MOTION██ TO SHOW CAUSE
IN FDCA NO. 1D2024-0914 FOR THE JUDGES
CONSIDERATION AND ORDER

Very Respectfully,

_____ M. Hyde
TRISTAN MICHAEL HYDE
WALTON COUNTY JAIL
40 SHERIFF CIRCLE
DEFUNIAK SPRINGS, FL 32733

FIRST DISTRICT COURT OF APPEAL

TALLAHASSEE, FLORIDA

TRISTAN MICHAEL HYDE,                    FDCA NO. 1D2024-0914

        PETITIONER,                      L.T. NO. 2024-CA-95

V.

FLORIDA DEPARTMENT OF LAW ENFORCEMENT,

                        RESPONDENT.

MOTION TO SHOW CAUSE

TO THE HONORABLE JUDGE PRESIDING:

COMES NOW, TRISTAN MICHAEL HYDE, PETITIONER AND FILES

THIS MOTION TO SHOW CAUSE IN THE ABOVE-ENTITLED AND

NUMBERED CAUSE HEREIN AND GROUNDS THEREFORE

RESPECTFULLY SHOW THE COURT AS FOLLOWS:

1 THE PETITIONER IS IN APRIL 30, 2024 RECEIPT OF

THIS COURTS APRIL 22, 2024 ORDER TO SHOW CAUSE.

2. THE PETITIONER HAS TIMELY FILED HIS MOTION

REQUESTING (10) DAY EXTENSION OF TIME TO SHOW CAUSE

ON APRIL 30, 2024 TOLLING THE TIME FOR THE PETITIONER

TO FILE THE INSTANT MOTION TO SHOW CAUSE PURSUANT

TO FLA. R. APP. P. RULE 9.300. (SEE NICARAGUA TRADER CORP

V. ALEJO FLORIDA PROPERTIES, LLC 19 SO 3D 395)

3. THIS HONORABLE COURT CITES BROWN, IN ITS

APRIL 22, 2024 ORDER TO SHOW CAUSE (PARA. 1)

(SEE: BROWN V. CAMPION, 757 So. 2d. 535, 536 (FLA. 1st DCA

2000)... DIRECTING THE PETITIONER TO SHOW CAUSE WHY

THE COURT SHOULD NOT TREAT THE INSTANT CASE AS A

PETITION FOR WRIT OF CERTIORARI SEEKING REVIEW OF THE

MARCH 19, 2024, ORDER DENYING INDIGENCY AND DISMISS

THE CASE FOR LACK OF JURISDICTION.

4. PURSUANT TO F.S.A. CONSTITUTION ART. 5 §4 (b)(3)

THIS DISTRICT COURT OF APPEAL MAY ISSUE WRITS OF

MANDAMUS, CERTIORARI, PROHIBITION, QUO WARRANTO,

AND OTHER WRITS NECESSARY TO THE COMPLETE

EXERCISE OF ITS JURISDICTION.

5 IN BROWN) THIS COURT CONVERTED THE APPELLANT'S

APPEAL

TO A PETITION FOR WRIT OF

CERTIORARI. HOWEVER, UPON THIS COURTS FURTHER

CONSIDERATION, THE FIRST DETERMINED SUCH TREATMENT

WAS NOT APPROPRIATE... GIVEN REASON THAT THIS

COURT FOUND THAT BECAUSE A PLAINTIFF WHO IS DENIED

2

INDIGIENCY STATUS AT THE TRIAL LEVEL HAS A SECOND

OPPORTUNITY TO SEEK INDIGIENCY STATUS FOR APPELLATE

PURPOSES, IT CANNOT BE PRESUMED THAT ⬤ THE APPELLANT

WILL BE ⬤ UNABLE TO SEEK REDRESS ON APPEAL CONFLICTING

WITH ⬤ THE FOURTHS HOLDING IN EBERHARDT V

EBERHARDT, 590 So. 2d 1134 (FLA. 4th DCA 1992.)

6. IN REGARDS TO THIS INSTANT PETITION, THE TRIAL

COURT DEPARTED FROM THE ESSENTIAL REQUIREMENTS

OF THE LAW IN VIOLATION OF F.S.A. § 57.082, 57.085,

57.081 DENYING THE PETITIONER ⬤ LEAVE TO

PROCEED IN CIVIL ACTION ⬤ AS AN INDIGIENT PRISONER

CAUSING IRREPARABLE HARM THAT CANNOT BE

REMEDIED ON APPEAL AS THE TRIAL COURTS DENIAL

OF ⬤ PETITIONERS INDIGIENCY STATUS IS NEITHER

A FINAL OR NON-FINAL ORDER APPEALABLE

PURSUANT TO FLORIDA RULE OF APPELLATE PROCEDURE

9.130.

7. THE PETITIONER'S STANDING ⬤ DIFFERS FROM

BROWN AS THE PETITIONER HAS FILED A PETITION ⬤

3

FOR MANDAMUS IN THIS COURT, NOT AN APPEAL, AS

████████ ████████ ████████ ████████████

REFLECTED IN BROWN.

8. IN QUIGLEY, THE SUPREME COURT HELD THAT

QUIGLEY'S SECOND MOTION WAS ACTUALLY APPEAL

OF INITIAL DENIAL OF INDIGENCY AND DISTRICT COURT

SHOULD HAVE REVIEWED CIRCUIT COURT'S ACTION. (SEE:

████████████ → QUIGLEY V. BUTTERWORTH 708 So 2d 270)

9. IF THIS COURT LOOKS AT QUIGLEY ████ CONSIDERING
                                    9.040 (c)
FLA. R. APP. P RULE ████████ WHICH PROVIDES THAT

" IF A PARTY SEEKS AN IMPROPER REMEDY, THE CAUSE

SHALL BE TREATED AS IF THE PROPER REMEDY HAD BEEN

SOUGHT."... ████████ IN ADDITION TO CONSIDERING

THE PETITIONER HAS FILED A PETITION FOR WRIT OF

MANDAMUS IN REGARDS TO INSTANT PETITION)... THIS

HONORABLE COURT RETAINS JURISDICTION IN REGARDS TO

████ THE INSTANT PETITION WHETHER TREATED AS

AS A PETITION FOR WRIT OF ████████ CERTIORARI,

OR AN APPEAL.

10. IF THIS COURT TREATS THIS PETITION AS AN

APPEAL ... PURSUANT TO FLA. R. APP. P RULE 9.430(a) THIS

COURT IS REQUIRED TO REVIEW THE LOWER TRIBUNALS

ORDER DENYING THE PETITIONER'S INDIGIENCY.

11. THE SUPREME COURT IN MATHEWS STATES THAT

MANDAMUS IS NEITHER THE APPROPRIATE VEHICLE

TO SEEK REVIEW OF AN ALLEGEDLY ERRONEOUS DECISION

BY ANOTHER COURT, NOR IS IT THE PROPER VEHICLE

TO MANDATE THE DOING OR UNDOING OF A DISCRETIONARY

ACT ... WHICH LEAVES A WRIT OF CERTIORARI AS THE

PROPER REMEDY, IN REGARDS TO THE INSTANT PETITION.

(SEE: MATHEWS V. CREWS 132 So. 3d 776 )

12. A COMMON-LAW WRIT OF CERTIORARI RESTS

IN THE SOUND DISCRETION OF THE COURT TO WHICH

THE APPLICATION WAS MADE, AND THUS, A COURT'S

GRANT OF CERTIORARI IS SUBJECT TO AN ABUSE OF

DISCRETION STANDARD OF REVIEW (SEE: WILLIAMS

V OKEN 62 So. 3d 1129)

5

13. THE TRIAL COURT ABUSED ITS DISCRETION DENYING THE PETITIONER'S INDIGIENCY PURSUANT TO ● F.S.A. 57.085 (7) AS THE PETITIONER IS CLEARLY INDIGIENT AS HE HAS ● BEEN DETERMINED INDIGIENT IN THIS COURT IN THE INSTANT ● PETITION WITH THE PETITIONER'S FINANCIAL STANDING NOT CHANGING FROM THE TIME OF PETITIONER ● APPLYING FOR LEAVE TO PROCEED AS AN INDIGIENT PRISONER PURSUANT TO F.S.A. 57.085 (7) IN THE LOWER TRIBUNAL TO ● THIS PRESENT DATE.

14. TO DISCUSS THE COMPLAINT FILED PURSUANT TO F.R. R. CIV. P. AND THE PUBLIC RECORDS ACT CH.119 ●●●●●●●● IN THE TRIAL COURT IN REGARDS TO THIS INSTANT PETITION BY THE PETITIONER ... THE PETITIONER REQUEST THE COMPLETE PUBLIC RECORD IN REGARDS TO HIS BIOLOGICAL FATHER'S DEATH ● APPROXIMATELY JUNE 2020 IN THE FLORIDA DEPARTMENT OF CORRECTIONS... FOR PURPOSES OF WRONGFUL DEATH CLAIM, CONSIDERING

EQUITABLE TOLLING (SEE: MACHULES V. DEPARTMENT OF ADMIN. 523 So. 3d 1132) AND IN REGARDS TO CURRENT FLORIDA PRISON OVER POPULATION. (SEE: DURAN V. GRISHAM 853 FED. APPX. 252 (MEM))

15. THE PETITIONER NOTES TO THE COURT THAT PRISON OVER POPULATION IS NOT NECESSARILY ~~A PRISON~~ SYSTEM EXCEEDING ITS CAPACITY TO HOUSE PRISONER'S, HOWEVER, A PRISON SYSTEM NOT HAVING THE NECESSARY CAPACITY TO EXTEND ADEQUATE CARE AND REQUIRED SECURITY TO THE HOUSED PRISONER'S OPENS THE ARGUMENT AS TO WHAT ACTUALLY DEFINES AND/OR DETERMINES PRISON OVER POPULATION.

16. THE PETITIONER DID NOT AGREE WITH SOME OF HIS BIOLOGICAL FATHER'S DECISION'S, HOWEVER, HIS BIOLOGICAL FATHER WAS A CHILD OF GOD AND WAS NOT SENTENCED TO CAPITAL PUNISHMENT.

CONCLUSION

17. THE PETITIONER HAS A RIGHT TO ACCESS THE TRIAL COURT IN REGARDS TO HIS COMPLAINT FILED

IN THE LOWER TRIBUNAL ... ████████ WITHOUT FEAR OF
PREJUDICE FROM THE TRIAL COURT DEPARTING FROM THE
ESSENTIAL REQUIREMENTS OF THE LAW IN REGARDS ████ TO
INDIGIENCY DETERMINATION PURSUANT TO FSA § 57.081,
57.082, AND 57.085. (SEE: MITCHELL v. MOORE
786 So. 2D 521          ). THE FLORIDA CONSTITUTION,
PREAMBLE CITES... "WE, THE PEOPLE OF THE STATE OF
FLORIDA, BEING GRATEFUL TO ALMIGHTY GOD FOR OUR
CONSTITUTIONAL LIBERTY, IN ORDER TO SECURE ITS BENEFITS,
PERFECT OUR GOVERNMENT, INSURE DOMESTIC TRANQUILITY,
MAINTAIN PUBLIC ORDER, AND GUARANTEE EQUAL CIVIL
AND POLITICAL RIGHTS TO ALL, DO ORDAIN AND
ESTABLISH THIS CONSTITUTION. THE LOWER TRIBUNAL
FAILED TO ████████████ UPHOLD THE
PETITIONERS CIVIL RIGHT TO ███ PROPER AND LAWFUL
INDIGIENCY DETERMINATION PURSUANT TO FSA § 57.081,
57.082, AND 57.085 DELAYING DUE PROCESS ███ (FSA
CONST. ART 1 SEC 9) AND DENYING ████FLORIDIANS████ THE
████████████ ██████ OPPURTUNITY TO PERFECT

8

OUR GOVERNMENT IN REGARDS TO FLORIDA DEPARTMENT

OF CORRECTIONS ███ REVOLUTIONARY REFORM

ADDRESSING PRISON OVER POPULATION WHICH IN RETURN

IMMEDIATELY STARTS SAVING LIVES AND IMPROVES

FLORIDIANS CAPACITY TO PERFORM PERSONALLY AND

PROFESSIONALLY WITHIN THE STATE (FLA. CIV. RIGHTS

ACT). THIS COURT RELYING ON BROWN ENCOURAGES

BIAS AND PREJUDICE IN REGARDS TO INDIGIENCY

DETERMINATION ███ IN THE LOWER ███ TRIBUNAL. IF A

CIVIL COMPLAINT, ███ IN REGARDS TO THE INSTANT

PETITION ███ IS NOT ADDRESSED PROMPTLY (SEE: IN RE SLOOP

946 SO. 2d. 1046          ) PRISONER'S LIVES

COULD BE LOST IN THE FLORIDA DEPARTMENT OF

CORRECTIONS AS A RESULT OF PRISON OVER POPULATION

PREVENTING ADEQUATE ███ MENTAL HEALTH CRISIS

PREVENTION ███ AND ███ RESPONSE WITHIN ALL FLORIDA

DEPARTMENT OF CORRECTIONS FACILITIES. THIS COURTS

DECISION IN BROWN REQUIRES A SECOND LOOK BY

THIS HONORABLE COURT. IN QUILLEY THE SUPREME

9

DIRECTED THE DISTRICT COURT OF APPEAL TO

RECONSIDER THE TRIAL COURTS INDIGIENCY DETERMINATION.

OF QUIGLEY. AS WORLD HISTORY HAS SHOWN TIME AND

TIME AGAIN.... SOLUTION COMES FROM THE

UNCOMMONLY PURPOSED ~~SO~~ MANY TIMES. ~~THE~~

TRIAL COURTS DENIAL OF INDIGIENCY HAS NOW

BECOME ~~AN UNCONSTITUTIONAL~~ PROCEDURIAL HURDLE.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, THE PETITIONER

ASK ~~THIS COURT~~ PURSUANT TO FLA. R. APP. P

RULE 9.040 (C) TO TREAT THIS PETITION AS A PETITION

FOR WRIT OF CERTIORARI, RECONSIDERING THIS COURTS

HOLDING IN BROWN., AND ISSUE WRIT OF CERTIORARI

DETERMINING ~~THE PETITIONER INDIGIENT PURSUANT TO~~

APPLICABLE STATUTE IN THE LOWER TRIBUNAL TO

~~PROCEED~~ FURTHER ~~IN THE TRIAL~~

COURT PROCEEDINGS... REVERSING THE TRIAL COURTS

DENIAL OF PETITIONER INDIGIENCY.

I DO HEREBY SWEAR A TRUE COPY OF THE FOREGOING

HAS BEEN SERVED ON THIS 6th DAY OF MAY 2024

V.I.A. U.S.P.S ON THE FOLLOWING:

HON. JUDGE JEFFREY E. LEWIS
571 U.S. HWY 90 E.
DEFUNIAK SPRINGS, FL 32435

HON. ATTORNEY GENERAL, ASHLEY MOODY
THE CAPITAL, PL-01
TALLAHASSEE, FL 32399

FLORIDA DEPARTMENT OF LAW ENFORCEMENT
MR. JAMES DOUGLAS MARTIN, JR., ESQ
P.O. BOX 1489
TALLAHASSEE, FL 32302

Very Respectfully,

TRISTAN MICHAEL HYDE
WALTON CO. JAIL
40 SHERIFF CIRCLE
DEFUNIAK SPRINGS FL 32433

11

EXHIBIT "D"

*ATTACHMENT "B"*

*[handwritten left margin, vertical:] I SENT PUBLIC RECORDS REQUEST IN 2017 AFTER CASE WAS CLOSED*

# FDLE

**Florida Department of Law Enforcement**

J. Mark Glass
Commissioner

**Office of General Counsel**
Post Office Box 1489
Tallahassee, Florida 32302-1489
(850) 410-7676
www.fdle.state.fl.us

Ron DeSantis, *Governor*
Ashley Moody, *Attorney General*
Jimmy Patronis, *Chief Financial Officer*
Nikki Fried, *Commissioner of Agriculture*

February 1, 2024

Tristan M. Hyde
796 Triple G Road
Defuniak Springs, FL  32423

*[handwritten:] MR HAYDEN HUDSON THIS IS MY BIOLOGICAL FATHER WHOM I NEVER MET FACE TO FACE AS AN ADULT HOWEVER CAME TO PROVIDE TO HELP...*

Dear Mr. Hyde:

RE:   Good-faith Deposit Invoice $102.33, FDLE Docket No. PRR-2022-2939
      Records on file with the Florida Department of Law Enforcement (FDLE) related to the
      Inmate Death of Patrick Conaly

**Partial redacted records are included with this Good-faith Deposit Invoice (Investigative Summary-OR-37-0108)**

*[handwritten left margin:] VITAL RECORDS OF ETOWAH COUNTY, ALABAMA ORIGINAL B.C. AS I WAS ADOPTED SHOW PATRICK AS MY BIOLOGICAL FATHER*

Please find attached records in response to your public records request. These records are provided pursuant to Florida's Public Records Law, Chapter 119, Florida Statutes. Portions exempt from public disclosure pursuant to the following have been redacted.

§119.071(3) and 281.301, F.S.      Records, information, photographs, audio and visual presentations, schematic diagrams, surveys, recommendations, or consultations or portions thereof relating directly to the physical security of an institution or revealing security systems of an institution held by an agency is confidential and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution.

Please regard this as a good-faith deposit invoice for $102.33 or research, retrieval & review of your public records request.  Based on the information you provided in your request, this will require extensive use of information technology resources, extensive clerical and/or extensive supervisory assistance. Costs are assessed pursuant to ss. 119.07(4)(a) and 119.07(4)(d), Florida Statutes (http://www.leg.state.fl.us/Statutes). This may not be the final amount due, but the best estimate of initial costs available at this time.

| Labor Costs Already Expended Processing Request | | | |
|---|---|---|---|
| **Salary Rate** | **Position Title** | **Hours Expended** | **Labor Total** |
| $17.68 | GOC I | 1.00 Research | $17.68 |
| **TOTAL BALANCE DUE FOR COSTS ALREADY INCURRED:** | | | **$17.68 (Waived)** |
| **Estimated Labor Costs for Request** | | | |
| **Salary Rate** | **Position Title** | **Est. Hours** | **Est. Labor Total** |
| $18.73 | OGC GOC I | 5.25 for Review and Redaction of records | $98.33 |
| **Estimated Duplication and/or Certification of Records** | | | |
| **Certification** | **Pages/CD/DVD** | **Postage** | **Estimated Duplication Total** |
| N/A | 1 CD@ 2.00 | | $2.00 |
| **TOTAL GOOD-FAITH DEPOSIT DUE** | | | **$102.33** |

Tristan Hyde
February 1, 2024
Page 2

After our office receives your good-faith deposit payment your public records request will return to the queue of records requests for processing. You may receive additional deposit invoices once the balance of the original deposit payment has been expended.

A "policy of requiring an advance deposit seems prudent given the legislature's determination that taxpayers should not shoulder the entire expense of responding to an extensive request for public records." "[T]he reasonableness of a policy and its application — based on the facts in a particular case — guides whether an abuse of discretion is shown." Morris Publishing Group, LLC v. State, 154 So.3d 528, 534 (Fla. 1st DCA 2015).

Your request will be closed 03/01/24 (30-Days from date above) if we do not receive the balance due. You will not owe any money if you choose not to pay the deposit invoice and your request will be closed without further action.

 NOTE: Access to records in the Department's custody is governed by State law, Chapter 119, Florida Statutes, and not by the Federal Freedom of Information Act. No provision is made for a waiver of fees under the Public Records Act.

Please remit a check or money order (we cannot accept credit or debit cards), in the amount of $102.33 with your docket number PRR-2022-2939 to:

Florida Department of Law Enforcement
Office of the General Counsel
Attn: PRR-2022-2939
P.O. Box 1489
Tallahassee, FL 32302

If you have questions concerning your request, please contact us at (850) 410-7676 or our agency address.

An agency may refuse to produce additional records if the fees for a previous request for records have not been paid by the requestor. See Lozman v. City of Riviera Beach, 995 so. 2d 1027(Fla. 4th DCA 2008) (s. 119.07[4], F.S., "does not require the City to do any more than what it did in this case," i.e., require Lozman to pay the bill for the first group of records he requested before the city would make any further documents available). Cf. AGO 05-28 (custodian authorized to bill the requestor for any shortfall between the deposit and the actual cost of copying the public records when the copies have been made and the requesting party subsequently advises the city that the records are not needed). Please visit the Sunshine Manual, http://myfloridalegal.com/webfiles.nsf/WF/MNOS-B9QQ79/$file/SunshineManual.pdf.

Sincerely,

Office of General Counsel
Florida Department of Law Enforcement

5

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### INVESTIGATIVE REPORT

On June 8, 2020, the Florida Department of Corrections (FDC) notified the Florida Department of Law Enforcement of a life-threatening injury to Patrick Conaty (DC# Q19645) after he was found hanging in his cell at the Central Florida Reception Center (CFRC), 7000 H C Kelley Road, Orlando. Conaty was transported to Advent Health East Hospital, Orlando, for treatment. On June 9, 2020, the FDC reported that Conaty was pronounced deceased.

On June 9, 2020, at approximately 0107 hours, Inspector Zachary Mulharan, conducted a voluntary, recorded, and sworn interview with Sergeant Daniel Garus in the administrative building at CFRC. The following is a synopsis of the interview.

Sergeant Garus was assigned to work inside security, meaning that he works throughout the inside of the institution. Sergeant Garus was in H dormitory when he heard emergency traffic requested on the radio and that an inmate was found hanging in F dormitory. Sergeant Garus responded to F dormitory and when he arrived he saw the inmate (Conaty) was lying on his side. Conaty's cell door was open and he was the only individual inside the cell. Sergeant Garus entered the cell and was assisted by Correctional Officer Jose Rodriguez and as they positioned Conaty onto his back. Sergeant Garus checked Conaty for a pulse but did not find one, then started cardiopulmonary resuscitation. An unknown inmate told Sergeant Garus that Conaty hanged himself. Sergeant Garus indicated that he did not see any marks around Conaty's neck and did not find anything that was obviously used as a noose. Sergeant Garus helped provide CPR to Conaty until medical staff arrived to assume medical care.

The audio-recorded interview with Sergeant Garus will be maintained as INV-4 in the related items section of this case file.

| Case Number: OR-37-0108 | Serial #: 5 |
|---|---|
| Author: Hubbard, David | Office: Orlando |
| Activity Start Date: 06/10/2020 | Activity End Date: |
| Approved By: Watts, Andrew Garett | |

Description: Sworn Interview with Sergeant Daniel Garus

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*



| | | |
|---|---|---|
| Florida Department of Law Enforcement | **Office of General Counsel**<br>Post Office Box 1489<br>Tallahassee, Florida 32302-1489 | Ron DeSantis, *Governor*<br>Ashley Moody, *Attorney General* |
| J. Mark Glass<br>*Commissioner* | (850) 410-7676<br>www.fdle.state.fl.us | Jimmy Patronis, *Chief Financial Officer*<br>Nikki Fried, *Commissioner of Agriculture* |

March 1, 2024

Tristan M. Hyde
796 Triple G Road
Defuniak Springs, FL  32423

Dear Mr. Hyde:

RE:   **Good-faith Deposit Invoice $102.33, FDLE Docket No. PRR-2022-2939**
**Records on file with the Florida Department of Law Enforcement (FDLE) related to the**
**Inmate Death of Patrick Conaly**

This is a courtesy notification that your public records request has been closed. An inquiry request was sent to you on 02/01/024 with your Good-faith Deposit Invoice. To date, no response or payment has not been received by the requested due date of **03/01/2024.**

If you have questions concerning your request, please contact us at (850) 410-7676. Our public website is <u>publicrecords@fdle.state.fl.us</u>.

We are committed to our fundamental values of Service, Integrity, Respect, and Quality.

Sincerely,

Office of General Counsel
Florida Department of Law Enforcement
Post Office Box 1489
Tallahassee, FL 32302-1489



*Service • Integrity • Respect • Quality*

9

EXHIBIT
"E"

## DISTRICT COURT OF APPEAL, FIRST DISTRICT
## 2000 Drayton Drive,
## Tallahassee, Florida 32399-0950
## Telephone No. (850) 488-6151

May 1, 2024

Tristan Michael Hyde,

        Petitioner(s)

v.

**Case 1D2024-0734**

L.T. No.: 2024 CA 94

Florida Department of Legal Affairs,

        Respondent(s).

## BY ORDER OF THE COURT:

I, Kristina Samuels, Clerk, District Court of Appeal, First District, issue this certificate of indigency in compliance with section 57.085 or 57.081, Florida Statutes (2021). The filing fee for this case is waived.

**I HEREBY CERTIFY** that the foregoing is a true copy of the original court order.

Served:

Walton Clerk

Hon. David Walker Green

Tristan Michael Hyde

Ashley Moody

PP